UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| Lucinda Leigh Davis,<br>    Plaintiff,<br><br>    v.<br><br>Federal Bureau of Investigation,<br>    Defendant | Case: 1:23-cv-03103 JURY DEMAND<br>Assigned To : Kelly, Timothy J.<br>Assign. Date : 10/12/2023<br>Description: Employ. Discrim. (H-DECK)<br><br>October 12, 2023 |

## COMPLAINT

### FACTUAL BACKGROUND

1)    Lucinda Davis began her career with the Federal Bureau of Investigation (FBI) as a Scientific and Technical Photographer in February, 2013.

2)    She was assigned to the FBI Laboratory, and in April 2016, she became the field photographer for the Atlanta Field Office (AFO).

3)    She was at all relevant times an exemplary employee receiving satisfactory performance reviews.

4)    At the end of 2020, Davis applied for the Administrative Specialist position at the FBI's legal attaché office ("Legat") at the U.S. Embassy at Nairobi, Kenya.

5)    In March, 2021, the FBI offered her the position, and she accepted it.

6)    Over the next few months after her acceptance, Ms. Davis planned and received training for her upcoming deployment to Legat Nairobi, which included a State Department (DOS) medical clearance.

7)    The nurse's unit at FBI Headquarters (FBIHQ) had a list of items needed for her medical clearance.

8) This list did not include vaccination.

9) The FBI never provided Ms. Davis with a medical task list explaining the items required for the new position.

10) On her visit to the physician for her medical clearance for these purposes, Ms. Davis specifically asked the doctor if she needed any vaccinations, to which the doctor replied vaccinations were not on the list provided by DOS or the FBI.

11) In September, 2021, Ms. Davis requested a Religious Accommodation because of her sincerely held religious beliefs which counsel against all vaccinations.

12) On October 20, 2021, Ms. Davis received notification from the DOS that she was medically cleared and received a worldwide medical clearance.

13) Also in October 2021, Ms. Davis was preparing for her deployment and at Quantico, taking the required training, Overseas Survival Awareness Program (OSAP), which she passed.

14) Shortly thereafter, Ms. Davis received an email from nurse Gretchen Devins in the FBIHQ health unit asking about her flu shot information.

15) Ms. Davis replied she did not intend to receive one.

16) Ms. Davis was referred to Nurse Robin Wood, who emailed Ms. Davis that she would need to have a flu shot and the COVID-19 vaccination in order to be deployed to Legat Nairobi.

17) Ms. Davis relayed that she asked numerous International Operations Division (IOD) employees on several occasions whether FBI policy stated that the flu and COVID-19 vaccinations are required for Legat Nairobi.

18) Even in emails between Ms. Davis and Nurse Wood, Nurse Wood consistently refers to the vaccinations as being "recommended."

19) Davis continued having numerous conversations with Nash, other IOD employees, and the FBIHQ health unit regarding the vaccination requirements versus recommendations, specifically the flu and COVID-19 vaccinations.

20) Other FBI employees with a fit for duty (FFD) requirement have signed a waiver to get out of the flu shot requirement, however Ms. Davis' AS position, does not have the FFD requirement, and a flu shot is not needed for her deployment.

21) Even the physician who gave her the DOS Class 1, Worldwide Available, medical clearance stated the flu and COVID-19 were not required for her travel to travel to Nairobi.

22) The FBI's Immunization Program Policy Guide (0990PG) dated Mary 24, 2018 section 4.1, 4.1, and 4.3 list required immunizations and neither Flu nor COVID-19 are mentioned.

23) Ms. Davis informed IOD about her Request for Religious Accommodation. Ms. Davis received an email from Nash stating that IOD was looking into the policy and would get back to her.

24) In January 2022, Ms. Davis had not received any response regarding her Request for Religious Accommodation.

25) Nor had she received any response regarding whether the vaccinations for FBIHQ policy were actual requirements and stated as much, or whether they were instead just recommendations at that time.

26) Ms. Davis was physically ready to be deployed and was fit for her position.

27) She had been working successfully in the United States, and was ready to go overseas to continue her position in another country. She was physically able to go and perform all functions of her job satisfactorily.

28) In the beginning of January 2022, Ms. Davis was the subject of an adverse employment action.

29) Ms. Davis emailed Nash to check the status of the policy and her Request.

30) On January 25, 2022, IOD employee Ann Nash emailed her and asked her to sign an electronic communication (EC) she drafted on her behalf on January 11, 2022.

31) The EC stated that Ms. Davis was withdrawing from the position of AS Legat Nairobi and detailed that she was not able to complete the necessary medical requirement of her task list to travel to an international county as required by FBI employees.

32) The EC also stated that Ms. Davis was a co-author, which she was not.

33) Ms. Davis refused to sign the EC.

34) Nash responded that IOD could not repost the position until she signed the EC.

35) Since Ms. Davis had no reason to withdraw from the position, she did not sign the EC.

36) Ms. Davis explained she had not received the FBI policy on required versus recommended vaccinations nor had she received the medical task list she was being told she failed to complete.

37) On January 25, 2022, Ms. Davis was removed from the AS position in Legat Nairobi.

38) The FBI reposted and filled the administrative secretary position with no communication to Ms. Davis that either had occurred.

39) On May 19, 2022, Ms. Davis filed a complaint with the Office of Equal Employment Opportunity Affairs (OEEOA).

40) The complaint proceeded to the Equal Opportunity Employment Commission (EEOC), which issued a decision on June 8, 2023.

41) The FBI issued a Final Agency Decision on July 14, 2023.

## COUNT ONE

### (Title VII Religious Discrimination: failure to accommodate)

42) All preceding paragraphs are fully incorporated as if set forth herein.

43) Although the D.C. Circuit has not articulated a specific framework for an employee's failure to accommodate religious beliefs, other circuits have adopted [and the D.C. Circuit has cited without officially adopting in *Taub v. FDIC*, No. 96-5139, 1997 U.S. App. LEXIS 41401, at *1 (D.C. Cir. Mar. 31, 1997)] an approach finding that, for a plaintiff to allege discrimination based on a failure to accommodate, the Plaintiff:

> [M]ust make a prima facie showing that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed [his employer] of this belief; and (3) he [suffered an adverse action] for failing to comply with the conflicting employment requirement.
>
> *EEOC v. Rent-A-Center, Inc.*, 917 F. Supp. 2d 112 (D.D.C. 2013)(citations omitted).

44) If the Plaintiff is successful in establishing a prima facie case, "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." *Id.*

45) As the Supreme Court has stated,

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." [...] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

46) In the recent decision of *Groff v. Dejoy*, 143 S. Ct. 2279 (2023), the Supreme Court found that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id* at 2294. It added the gloss that, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id* at 2295.

47) Ms. Davis expressed to the FBI that her religious beliefs prohibited her from accepting the COVID-19 vaccine.

48) The FBI failed to accommodate Ms. Davis, instead removing for the position that she had rightfully earned.

**PRAYER FOR RELIEF**

49) All preceding paragraphs are fully incorporated as if set forth herein.

50) Plaintiff requests the following relief:

a. Compensatory damages, including back pay, forward pay, and emotional distress, in the amount of $250,000.

51) Attorneys fees and costs.

52) All other damages appropriate under the circumstances.

## JURY TRIAL

53) Plaintiff requests a jury trial.

Dated: October 12, 2023

Respectfully Submitted,

*Cindy Davis* by ESL

Cindy Davis
15 Chester Street
Front Royal, VA 22630
(540) 631-4081
davis_54321@yahoo.com